Good morning, Your Honors. May it please the Court, my name is Joseph May. I represent the appellant Rogelio Hechavarria in this case. With the Court's permission, I'd like to reserve five minutes for rebuttal. You have to manage your own time. Okay. Thank you. Three issues are raised in this appeal. The first one is whether there was color of law when the defendant allegedly attacked the plaintiff. The second issue is whether the City Attorney's Office had an impermissible conflict of interest when it represented both the city and the defendant and alleged that the defendant was not acting under color of law. And the third issue is whether the district court erred in sealing certain documents in the case. May I ask a question about the second issue? Yes, Your Honor. What difference did it make to the plaintiff, even if there were a conflict? I mean, wouldn't he benefit if there were a conflict, if the attorney, the city attorney decided to put its interests ahead of those of the individual or vice versa? Wouldn't that enhance the likelihood that the plaintiff might prevail? So what difference did it make? Well, I don't see how it would enhance the likelihood that the plaintiff would prevail because the city attorney's office is still defending Mr. Georgopoulos.    because the city attorney's office is still defending Mr. Georgopoulos. The other thing is, since the case has been dismissed, since the Federal claims were dismissed, the State claims have been refiled in Superior Court where they're proceeding now. And that was brought to the Court's attention in a series of requests for digital documents. But if I'm representing two clients and I advance the interests of one and not the other, I'm going to have to go back and re-refer the case. So I think that based on all the facts and circumstances that we were aware of, and this case was disposed of very early on, so from the beginning of the case, we looked at it as a colorable claim that the defendant was acting under color of law. And so we brought the city into the case. Had this been, had we believed that this was only an assault and battery case against a city employee with no indemnification, I don't know that this case ever would have been brought. But to get to Judge Carr's point on conflict, it seems to me it enhances your argument that color of law argument if the city's coming in and representing him in the first instance. And second, as a practical matter, why do you want to be against two lawyers instead of one? You get two bites at the apple every cross-examination, two bites at the apple every deposition. I just don't understand how you're prejudiced by it. Well, there's two points. What the city's doing, in our view, is they're manipulating the system. If you have a Federal civil rights case. You sued the city. You brought them in. If you hadn't sued them, you wouldn't be seeing them. But you brought them in. So why is that your ability to speak? They can do what they want to. They're the other side. They're sitting on the other side of the room. They don't have to act in your client's interests. They don't. But they've basically eviscerated my client's ability to collect money in his personal injury at a civil rights place. Well, that's a good thing from their perspective. You're suing them. It is a good thing from their perspective. But the exception to the rule that an opposing party can't raise a conflict, and it's a narrow exception, but it's stated in several district court cases. It's the in re cotton, sorry, in re yarn processing patent validity litigation case out of the Fifth Circuit, which expresses the majority view. The exception is where the conflict is open and obvious. It's manifest and glaring. But you're the other side. So why should we care how you feel about it? Well, that gets back to the other point, and that's that it does affect the plaintiff directly. Well, that affects you is irrelevant. I mean, that's like the objection, Your Honor. It's prejudicial to my case. That's the reason they're trying to put that evidence in. They're allowed to do whatever they want to. They're not required to help your client. You're suing them. Right. We believe the patent, the yarn processing case states that the district court's required to address a serious conflict like that. And the district court didn't address it at all. Well, he said you had no standing. He addressed it directly. He said I don't have to get to the merits because you don't have standing to raise it. Right. Well. And how isn't this like a situation in Rule 44 in a criminal case where, and I believe that's the right rule, where fairly routinely where there is an appearance of conflict, one lawyer representing two defendants, the government will at least call it to the court's attention and ask the court to inquire and say what's going on here. And if the court's satisfied that there's no reason to be concerned, that's a decision for the defendants to make. If they make it themselves, how can an opposing party get between the defendant or any litigant and his or her chosen lawyer? That's what's going on here, isn't it? I don't agree with that. The Collier case, I believe it's the central district, it's referred to frequently and it seems to be the leading case in this circuit since this Court has not addressed this issue squarely. And in that case it says that if the conflict affects the litigation so as to deprive the party of a fair proceeding, then he does have standing. And it's analogous to the Dunton case that we cite out of the Second Circuit. Very similar factual circumstances. And the Second Circuit held that that was a very clear conflict of interest where  there was no color of law. He succeeded and basically left the officer out to dry. And the Court ---- Right. But that prejudiced the officer, not the plaintiff. I mean, I don't understand how it affects you in this case because you've got the deep pocket in there. They're basically accepting the defense. It just ---- maybe I'm missing something, but it seems to me it all inerts to your benefit. Well, in Dunton they pointed out that the injury to the plaintiff ---- first of all, they pointed out that it would confer an unfair benefit to the defendant because they could get out of the case by manipulating the ethical rules. But it also affected the plaintiff's ---- How does that apply here? How is any defendant getting out of the case by manipulating the ethical rules? We believe the conflict is absolutely clear. No, no, no. Ask a question. You offered up a case you thought was analogous because the defendant was able to get out by manipulating the ethical rules. That's what you just said. Yes. How does that apply here? What manipulation of the ethical rules? How is the defendant getting out of the case? They're not getting out of the case. You brought them in. The defendant is out of the case, Judge ---- Well, by winning on the substantive motion. But only because they didn't represent the interests of their client. Had they represented Mr. Georgopoulos's interests, he would argue that he was acting under color of law, so he'd be indemnified. The city is now representing that they're not going to indemnify him. Isn't that his choice? If he decides he'll give up that defense in exchange for having the city attorney represent him, why is that your interest? Why isn't that his decision? It ---- Why isn't that just like what Judge Carr pointed out in the criminal context? It isn't the prosecutor that gets to decide who's going to represent the defendants. It's the defendants. A client under ---- and the Federal courts do look to California law to determine whether there's an ethical violation. Under California law, you can't represent ---- I've got to tell you, you've used most of your time on an issue that doesn't seem to have a lot of traction. Is there anything else you want to focus on? Well, then, yes. I'd love to get right into the color of law issue. What's your best evidence in this case that the GPS, that the defendant used the GPS to locate your client? Well, unfortunately, there wasn't discovery done. And there's been an issue about whether we declined discovery. I think it was clear in the transcript of the hearing that Judge Breyer, the district court, had told us that we'll accept the allegations as true because he wanted to give the defendants an early opportunity to move for summary judgment. However, at page 101 of the record, plaintiff testifies that he has GPS on his radio. And at pages 122 and 132 of the record, this is the deposition testimony of Mr. Hechevarria, he testifies that the defendant was repeatedly able to locate him at will. And I think there's a fair interest just based on the evidence, without having conducted discovery, that he was able to do that by use of his government position. And that's the McDade case. Right. I don't understand the McDade case. I'm just wondering what factual support you have for it. And this isn't before the Court, but this, I think, highlights the need for discovery in a situation like this. Just this week, on Monday, a gentleman who worked at Auto Return for several years was deposed by the city in the superior court proceeding, and he confirmed that a parking control officer can locate the whereabouts of a tow truck driver at any given time, and that's something that a member of the public cannot do. I know it's not before the Court because we didn't do this kind of discovery in the district court because the district court wanted to do it.   I'm just wondering whether it's possible to confirm that the parking officers are here when the officer's using his own private vehicle with the GPS. I mean, how would that happen? What he testified to was that the parking officers are here. Hold on. I mean, what's your understanding? My understanding is that it's possible, but we didn't confirm one way or the other based on Monday's deposition, so I don't know. But he did testify that the officers are given a separate cell phone by the city and that they can contact Auto Return's dispatch and ask the dispatcher where a tow truck driver is located, and they can locate them either by the GPS or by calling the parking officer and asking or by, excuse me, the tow truck driver and asking where he's located. So I think that there's a very fair inference that Mr. Georgopoulos located Mr. Hecheverria on the day of the incident because of his position as a government official who had access to these means. Is there any case where a plaintiff successfully has stitched together the bits and pieces that you do in your brief and has sustained or has been upheld in a color of law? No, Your Honor. Not all the bits and pieces. This is a unique situation, but I think that the district court failed to actually weigh all the factors, and it took each individual factor and said, well, this one's not dispositive. And I think that that's error. Okay. You've used up your time, but we'll give you a couple minutes for rebuttal. I appreciate that, Your Honor. Let's go to Mr. Lenz. Mr. Lenz, you may return to your desk. I'm ready, Your Honor. May it please the Court, Blake Loebs for the defendants. The color of law issues in this case are not even close. There are four factors that make it dispositive as to color of law. First, Mr. Georgopoulos is not a police officer. He's a parking control officer with no authority to arrest or detain anyone. His authority is to issue parking tickets. Second, he was off-duty. He wasn't even in the act of issuing parking tickets. He wasn't wearing his uniform. He wasn't driving a work vehicle. Third, and perhaps more importantly, this involves a purely private matter. It involves Mr. Georgopoulos and Mr. Hecheberria and a dispute related to Mr. Georgopoulos' wife. He can't get much more private than that. Well, what about McDade? I mean, if we draw the inferences in favor of the plaintiffs as to the GPS issue, then the McDade case would seem to indicate that there was some official involvement. I think there are two responses to that. First, I think the McDade case involves a different situation where an individual accessed private confidential medical information to locate his ex-wife at a battered shelter. Well, what's different from that, from going into the records of a GPS tracking system and locating the guy to go beat him up? Well, first, there's no evidence that that would be private information. Hold on. I'm just saying if we construe the evidence in the light most favorable to the plaintiff at this stage, I understand you're going to have a factual defense. But if what he says is true, doesn't that get him over the hurdle in McDade? I don't think it necessarily would, because I think it doesn't involve the same type of abuse of a government authority by accessing private confidential information. There's no evidence that that GPS system and where a tow truck driver is is any way related to the same type of confidential information as you found in McDade, which is private medical information finding a woman who's located at a shelter. But I think the bigger issue is there is no evidence whatsoever in the record to support Plaintiff's allegation. Well, right, because it didn't get to due discovery. I'm just saying, you know, the ---- And I suggest it's not that he didn't get to due discovery. It's that he didn't due discovery. If we look at his 56F application, which is a declaration that he sustained, he didn't say he didn't get to due discovery. The only thing that he's ---- that Plaintiff's counsel said is the motion was made before discovery was completed, and that is completely insufficient for a declaration under 56F under the Ninth Circuit. Had there been a timetable for discovery? There was four months. We had four months from the date that Judge Breyer said there would be a motion made on color of law, and there are four months in which to do discovery. The defendants did the discovery they needed, and the Plaintiff didn't do any. And this idea that Mr. ---- that Judge Breyer somehow said any fact that you have will be deemed admitted just flatly is contradicted by the record. You'll look at Plaintiff's moving papers. There isn't any mention of that whatsoever. In fact, he submitted facts. You'd think if there's some sort of agreement by the Court that any fact is deemed admitted, there would be a mention of that in his papers. Or there might be a mention of it in his Rule 56F declaration. Why didn't he have discovery? Well, I didn't need any, Your Honor, because none of that came out. Instead, contrary to all of the requirements for a 56F declaration, which says you have to state what discovery you need, why you weren't able to complete it, and why it would be important to summary judgment under the Tatum case in the Ninth Circuit, he didn't do any of that. And this is an abuse of discretion standard by Judge Breyer. And in no way could Judge Breyer have abused his discretion by not allowing that further discovery based on that showing in the Rule 56F statement that was submitted by Plaintiff. Well, let's assume for the sake of argument that he did establish in discovery that the officer did use the GPS system to locate this driver and with the intent of going to beat him up. Why isn't that? You would concede, I think, that that gives you enough to get to a jury under McDade. I still don't think it would be enough. It would be a factor weighing in favor of federal law, certainly. But it would not be enough. What's the principle distinction that you draw between finding out where a battered shelter is, which is not a medical record, just location of a battered shelter, and finding out where a truck driver is so the purpose of going up and beating him up? The distinction would be that in the McDade case that had to do with the individual accessing a confidential database. Is the GPS – I assume that the GPS system isn't public information where these tow drivers are. Your Honor, I don't think that's a valid assumption to make. I think a lot of people may have access to that. And there's no evidence at all in the record about that issue. All right. Well, I mean, assuming for the sake of argument that it is a private database that's confidential, proprietary, owned to the city, it seems to me he's got an argument. He's got a thread through all those – sort of the needle on that in terms of an evidentiary matter. But I think he's got a theory. I would agree, Your Honor, that if the evidence – there was some evidence that it was a confidential database and that he did access it in order to locate Mr. Hecheverria, to find him, to beat him up, it would be very similar to the McDade case. But we just don't have any of that here. Well, turning on the other hand, I mean, I don't think we've said you can find out – use a system to locate a car via GPS as something that's public information or the police can get without a warrant. There's just no information in the record whatsoever about that one way or the other. But, Your Honor, the only way the plaintiff is getting into that suggestion is the plaintiff says, well, he found me there in front of Auto Return. So it must have been through this system. Yes. That's pure speculation. There are a thousand other ways he could have known he was there. According to Mr. Georgiopoulos, he told the plaintiff he was going to be there. That's one way he could have known he was there. It's right across from where DPT's offices are. People could have saw him and said, hey, Mr. Georgiopoulos, I saw Hecheverria parked outside on 7th Street. It's right across from the Hall of Justice. He's sitting in plain sight in the middle of the street. Any number of ways, Mr. Georgiopoulos could have found that out. So to speculate that the way that it happened is the one way in which the plaintiff might have a link towards color of law is impermissible because they had every opportunity to present that evidence in opposition to summary judgment, and he presented by his own admission none other than pure speculation. And that's not enough to find color of law. He had the opportunity. He had four months to do that discovery. He didn't. He waited until the summary judgment motion, where he filed his declaration to say, and this is the quote in terms of what he said in the declaration, that the motion was made in court. Kennedy, I gather that your response is we shouldn't tell ourselves trying to deduce from various bits and pieces in the record what, in fact, might have happened because he could have gotten that evidence. And in time, if summary judgment comes on, you've got to have evidence. Correct, Your Honor. And plaintiff's counsel's representation that, in fact, that would be a way in which you could locate Mr. Georgiopoulos is flatly untrue. We deposed the individual who's in charge of auto return. He said they didn't have that technology at the time. That's not in the record here because it was never an issue raised. May I turn to a different issue, and that is the sealing order. I don't – there are no findings supporting the sealing order. Under our case law, I don't think it can be sustained, at least from my perspective. What justifies the sealing order in this case? Your Honor, this is interesting in that these documents were obtained by plaintiff's counsel from a different case. I understand that. And in that case, there was a protective order that said if you want to use these documents, they have to be sealed. And it was signed by plaintiff's counsel, and that was – that was administered by a different judge. The plaintiff did not go before that judge and ask their documents not to be sealed. But here's another interesting fact with that issue. The plaintiff was not even supposed to have used these documents in this case. There was a stipulated protective order saying they should be used only in the other case. The plaintiff suggests that he got permission from the city to use them only if they filed – sealed. Now, based upon his representation that that's the reason that he got permission to use them, he seeks to have them unsealed. They're private documents. Well, I think the issue is somewhat different in this case, which is that, generally speaking, we don't support sealing orders without findings of the district court and the district court didn't make them. Well, we did brief the issue thoroughly before this Court. I know you did. And the arguments that we put forth were that these are private personnel records that were obtained under a confidentiality provision and that they're not public records, and that's the basis for them to remain sealed. But all we have – I'm sorry. No, no. But all we have is the conclusion and not the reasoning behind it. From the court. From the court. Let me ask you directly. Why wouldn't information into wrongdoing by a city officer not be public information? It would be official information, Your Honor, as privileged documentation kept by the city, in part because there would be accusations. It interferes with the ability of the city to do investigations if they know every private document they get will be turned over and made public. They'll be less likely to – there are a lot of reasons why official information documents related to an individual's conduct are kept private. Well, some of these without getting it specific are closed cases. True. I'm trying to think. Well, let's assume for the sake of argument. Yes. I believe. What interest would the city have in protecting closed cases of investigations of officers? They're private documents related to personnel issues. And even in the police – But you are not a private employer. You're a public employer. Even in the police context, those documents are considered personnel records and they are maintained as private. Under the California law, you have to file a pitches motion even to get access to those types of documents. And the Federal courts that relate to the privacy issues for those documents all find that they may be discoverable, but they're appropriately protected under a stipulated protective order. And that's what happened in this case with the judge looking at these documents on plaintiff's motion to get the documents. Judge Patel specifically considered whether they should be under the protective order and ordered that they be under the protective order and if they should be used, should be sealed. So that judge weighed all of this. And he's trying to circumvent that, circumvent the protective order that requires him, if he wants to get them unsealed, to go through Judge Patel and then introduce them here. And I'm suggesting for about five different reasons, that's inappropriate. Right. Okay. I understand your argument. Thank you for it. And our questions have taken you over time. You have two minutes. We'll give you two minutes for rebuttal. Thank you, Your Honor. Would you put two minutes on the clock? Hold on just a second. Thank you. Okay. The Court did pose the question about how the McDade case would be distinguishable, and I think that the Court seemed to pick up on the fact that whether the ---- Was there anything confidential about your client's whereabouts? The auto return employee testified that the general public would not be able to call dispatch and find out where a parking lot was located. The question I asked, was there anything confidential about your client's whereabouts? He was driving around in the public streets, right? He wasn't in a battered spouse shelter. Confidential. Not confidential, I guess, but not accessible to the public. And so it was ---- Did you depose the individual defendant in this case? No. Not in the Federal proceedings. And here's the thing. I mean, I really wish there was a ---- But aren't you sort of stuck with that? I mean, you could have asked him how he got the information, and you did. There was no court reporter at the initial case management conference. Judge Breyer asked both sides, what do you think you're going to need to oppose the summary judgment motion as far as discovery? This is our first meeting with the judge, and the defense said we wanted to depose the plaintiff, and I didn't come up with anything at the time. And he said, well, because we're going to do this so early, we're going to take the plaintiff's allegations as true. And that's ---- and I reminded him of that, and he didn't contest that.  Did you issue any ---- My understanding was ---- Any notices of deposition or ---- When Judge Breyer made that ---- Well, I understand for the purposes of the motion, I'm just interrupting you for a second to get to the point. But why wouldn't you want to depose the defendant anyway? I didn't at the time. I didn't think that there was anything that he would have to say that would go to the issues. It wasn't all, you know, I didn't know what their motion was yet. I didn't know what all the issues were going to be at that point. Well, but at some point it occurred to you that he may have used the GPS unit to locate your client. And why didn't you take some discovery as to that? My understanding was that no discovery was permitted other than the deposition of the plaintiff, because that's what Judge Breyer had indicated at the case management conference statement. He asked the parties what they wanted, and he said, okay, well, that's what we'll do, and then we'll get to the summary judgment motion. Discovery wasn't open as far as I was aware. But, excuse me, it's up to you to say, wait a minute, Judge. They're not talking about a motion to dismiss where there probably wouldn't be discovery. They're talking about a motion for summary judgment. It was treated a little bit like a motion to dismiss because of how early it was. But it wound up as a motion for summary judgment, correct? It did. Is that what it was captioned, was motion for summary judgment? For partial summary judgment. And, okay, so even if ---- I mean, and you didn't say, time out, Judge, please give me an extension because I've not been able to take discovery, and give me another month, six weeks, or whatever. I attempted to ---- Sorry. I didn't mean to interrupt you. That's all right. Did you file a motion to that effect? I attempted to include in my declaration information indicating that we would need more discovery. But did you file a motion to tell the judge, I need an extension? I didn't file a separate motion, Your Honor. It's fairly commonplace, I would assume. Usually it's done in Rule 56, I believe it's the F declaration. But here's the ---- so, you know, my backup argument is the defense says it's completely speculative that Mr. Georgopoulos found my client. Well, he found him on several occasions. I mentioned several places in the record where my client testified that he was able to find him at will. He'd be somewhere in the city, and Mr. Georgopoulos would show up and threaten him and harass him. And that would happen over and over again. And I think it's a reasonable inference, not mere speculation, that he was using these resources to locate him that way. Okay. And that's ---- I think we have your argument at hand, and our questions have taken you over your time. So thank you for your argument. And we, as you can tell, we do have spent quite a bit of time on this case, reviewed  So the points you didn't get to, I think, are fairly well presented in the brief. Thank you, Your Honor. Thank you. Thanks for your argument. The case is currently submitted for decision.
judges: Carr, Thomas, Clifton